KELLER ROHRBACK L.L.P.
Havila Unrein
407 Main St. SW, Ste. 1
Ronan, MT 59864
Phone: (406) 281-7231
Fax: (206) 623-3384
hunrein@kellerrohrback.com

***Attorney for Plaintiff;***
***Additional Counsel on Signature Page***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JOEL CLEARY, M.D., individually and on behalf of all others similarly situated, | Case No. 4:16-cv-00061-BMM |
| Plaintiff, | |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| RETIREMENT PLAN FOR EMPLOYEES OF NORTHERN MONTANA HOSPITAL, ADMINISTRATIVE COMMITTEE OF THE RETIREMENT PLAN FOR EMPLOYEES OF NORTHERN MONTANA HOSPITAL, DAVID HENRY, KIM LUCKE, BONNIE O'NEILL, and NORTHERN MONTANA HOSPITAL, | |
| Defendants. | |

## INTRODUCTION

1.      Plaintiff Joel Cleary, M.D., brings this Class Action Complaint against Defendants Retirement Plan for Employees of Northern Montana Hospital, Administrative Committee of the Retirement Plan for Employees of Northern Montana Hospital; David Henry, Kim Lucke, and Bonnie O'Neill, individually and as members of the Administrative Committee of the Retirement Plan for Employees of Northern Montana Hospital; and Northern Montana Hospital pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").

2.      Plaintiff and the members of the putative classes, as defined below, are or were participants in and/or beneficiaries of Defendant Retirement Plan for Employees of Northern Montana Hospital who have been or will be denied certain retirement benefits to which they are entitled under the terms of that Plan and/or ERISA with respect to vesting and accrual of benefits as well as Defendants' failure to comply with ERISA's claims procedure rules.

3.      As detailed below, Plaintiff alleges that both ERISA and the Defendant Plan's terms were violated by, among other things, the refusal to pay Plaintiff and others benefits to which they are entitled under the terms of the Defendant Plan and/or ERISA, as well as benefits in the correct amounts required by ERISA.

1

4.     Furthermore, Defendants have failed to provide Plaintiff and presumably others with the claims procedures mandated by ERISA, even refusing to allow Plaintiff to file a claim for benefits.

## I.     JURISDICTION AND VENUE

5.     **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.     **Personal Jurisdiction**.  ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of the Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them.

7.     **Venue**.  Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and in this Division pursuant to L.R. 3.2(b) because the conduct that is the subject of this lawsuit occurred within this District and this Division, at least one Defendant resides in this District and Division, and all Defendants conduct business within this District and Division, either directly or through wholly owned and controlled subsidiaries.

## II.     THE PARTIES

**A.     Plaintiff**

8.     Plaintiff Joel Cleary, M.D. ("Plaintiff"), is a physician who resides in the state of Idaho.  Plaintiff is a participant in the Defendant Retirement Plan for

Employees of Northern Montana Hospital within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

**B.    Defendants**

9.      Defendant Retirement Plan for Employees of Northern Montana Hospital (the "Plan") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2).

10.     Defendant Administrative Committee of the Retirement Plan for Employees of Northern Montana Hospital (the "Committee") is the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

11.     Defendant David Henry is a member of the Committee and as such is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Defendant Henry is also the President and CEO of Northern Montana Hospital, and serves on its Board.

12.     Defendant Kim Lucke is a member of the Committee and as such is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Defendant Lucke is also the Financial Director of Northern Montana Hospital.

13.     Defendant Bonnie O'Neill is a member of the Committee and as such is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Defendant O'Neill also serves as the Vice President of Employee Services at Northern Montana Hospital.

14.     The Committee, Defendant Henry, Defendant Lucke, and Defendant O'Neill are sometimes referred to collectively herein as the "Fiduciary Defendants."

15.     Defendant Northern Montana Hospital (the "Hospital") is the Plan Sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

### III.   THE PLAN

16.     The Plan was adopted in 1979. The Plan is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan is funded by contributions by the Hospital which are then invested in a tax qualified trust fund.

17.     The Plan's assets at any point in time consist of the Hospital's contributions, plus investment earnings, minus investment losses, minus benefits paid and minus administrative expenses paid.

18.     Plan participants are entitled to benefits at age 65 (the Normal Retirement Age under the Plan) or at an earlier date as set forth in the Plan's Summary Plan Description[1] dated January 2009 ("2009 SPD").

19.     The amount of benefits to which a participant is entitled is based on Plan provisions which appear to have been amended from time to time.

20.     In general, the 2009 SPD sets forth the following rules for accrual of benefits since the adoption of the Plan:

    a.     for years of credited service[2] from 1979 – 1986, a participant accrued benefits equal to 1.5% of earnings up to $1300 per month and 2% of past earnings above $1300 per month;[3]

---

[1] A summary plan description is a document which is required to be provided to a plan's participants in lieu of the full plan document. ERISA § 102(a), 29 U.S.C. § 1022(a). It is required to contain certain basic information including: "the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits[.]" *Id*. § 102(b), 29 U.S.C. § 1022(b).

[2] In general, the 2009 SPD defines a year of service for accrual of benefits as a calendar year in which the participant earned at least 1800 hours of service. Partial years of service are credited for calendar years in which a participant earned at least 1000 hours of service but less than 1800 hours. In general, an hour of service is an hour for which the participant was paid including vacations and holidays.

[3] The 2009 SPD defines "earnings" as "1/12 of [the participant's] highest average earnings over any three complete calendar years (including years after 1987)."

b.    for years of credited service from 1987 – 1998, a participant accrued benefits equal to 1% of future service earnings[4] up to $1300 per month and 1.5% of future service earnings above $1300 per month;

c.    for years of credited service from 1999 – 2008, a participant accrued benefits equal to 1% of annual compensation[5] up to $15,600 and 1.5% of annual compensation above $15,600;

d.    for years after 2008, accrual of benefits is based on a Cash Balance "Pay Credit" system which bases the percentage of annual compensation taken into account on the sum of a participant's age and years of service.

## IV.   FACTS

21.    Plaintiff was initially employed as a physician by the Hospital from on or about July 12, 1993 to October 10, 1997. At the time he resigned from the Hospital in October 1997, he was 40% vested under the Plan.[6]

---

[4] The 2009 SPD defines "future service earnings" as the participant's monthly earnings as of January 1 of each year for salaried employees and the participant's hourly rate of pay as of January 1 of each year for hourly employees.

[5] The 2009 SPD defines "annual compensation" as compensation reported on the participant's W-2 form.

[6] Vesting is a *nonforfeitable* right to receive a pension benefit either immediately or at some time in the future.

22.     ERISA, as initially passed in 1974 (P.L. 93-406), set forth three (3) vesting schedules. A plan was permitted to adopt any one of the three or a more liberal one, but could not adopt a stricter one.

23.     ERISA's vesting schedules (*see* ERISA § 203(a)(2), 29 U.S.C. § 1053(a)(2)) have been amended from time to time. According to the Plan's 1992 Summary Plan Description ("1992 SPD"), during Plaintiff's initial period of employment with the Hospital the Plan used the following graduated vesting schedule:

| Years of Service[7] | Vested Percentage |
|---|---|
| Less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 | 60% |
| 6 | 80% |
| 7 or more | 100% |

24.     Subsequent to Plaintiff's resignation from the Hospital, Plaintiff received a Notice of Deferred Vested Benefit from the Plan (the "Notice"). The Notice, which is dated May 13, 1998, stated that Plaintiff's "Total accrued monthly

---

[7] The 1992 SPD defines "Year of Service" for vesting purposes as each 12 month period starting on the participant's date of hire and on each anniversary of that date in which the participant earns at least 1000 hours of service.

benefit" was $ 492.72, that his "Vested Percentage" was 40% and that the

"Amount of vested monthly benefit" was $197.09. The Notice also states this is the

amount Plaintiff will receive if "you elect for payments to begin on your normal

retirement date, *August 1, 2016*." (Emphasis in original.)

25.    Plaintiff was reemployed by the Hospital in February 2010 and

worked full time until on or about May 2011.  He then worked part time until he

again left the employ of the Hospital in June 2012.

26.    Because Plaintiff was credited with 40% vesting under the vesting

schedule in effect when he initially terminated his employment with the Hospital,

Plaintiff had four (4) years of vesting service at that time.

27.    In order for Plaintiff's vesting service after reemployment to be

applicable to benefits he earned during his initial employment period, he had to

complete at least one year of service after returning to the Hospital. ERISA §

203(b)(3)(B), 29 U.S.C. § 1053(b)(3)(B); 26 C.F.R. § 1.411(a)-6(c)(1).

28.    Upon Plaintiff's return to employment, a participant had to work at

least 1000 hours in a calendar year to accrue a year of vesting service.  *See* 2009

SPD. Having been employed (a) full time in 2010 (for over 10 months) and (b) full

time for about four (4) months and part time for about eight (8) months in 2011,

Plaintiff worked over 1000 hours in each year.[8] Thus, his reemployment vesting service is applicable to the calculation of the benefits he accrued during his initial employment period.

29.     The 2009 SPD also reflects that at least as of January 1, 2009, the Plan's vesting schedule had been amended so that only three (3) years of vesting service were required for 100% vesting. Thus, Plaintiff is 100% vested and assuming that the benefit amount set forth in the Notice was correct,[9] Plaintiff is entitled to the full $492.72 rather than 40% of that amount for his initial employment period.

30.     For his period of reemployment, the 2009 SPD provides that a participant receives points based on the sum of a participant's age and years of vesting service as of the end of each Plan year. As of the end of 2010, Plaintiff was 59 years old with five (5) years of vesting service which credited him with 64 points. As of the end of 2011 he had 66 points.[10]

31.     The 2009 SPD states that Point totals between 60 and 69 provide a pay credit of 3.5% on annual compensation up to the Internal Revenue Service

---

[8] It is possible that Plaintiff also worked more than 1000 hours in 2012 prior to resigning.

[9] Plaintiff does not necessarily dispute the amount of his benefit at the time he initially left employment but will not concede its accuracy absent verification which he seeks herein.

[10] If Plaintiff worked more than 1000 hours in 2012, he had 68 points as of the end of that year.

maximum. 26 U.S.C. § 401(a)(17) provides that annual compensation above $200,000 may not be taken into account but that this amount will be adjusted annually to take into account increases in the cost of living. The Internal Revenue Service set the maximum for 2010 and 2011 at $245,000.[11] Plaintiff earned more than the Internal Revenue Service maximum during 2010, so only $245,000 may be taken into account. Thus, Plaintiff accrued a "Cash Balance Pay Credit" of $8,745 ($245,000 x .035 = $8,745) in 2010.[12] In 2011, Plaintiff earned approximately $214,314.  Therefore, Plaintiff accrued a "Cash Balance Pay Credit" in 2011 of $7,501 ($214,314 x .035 = $7,501).  The 2009 SPD also applies an interest factor to a participant's credit and converts it to an annuity to determine the participant's monthly benefit. Plaintiff does not know the interest rates or other factors the Plan uses to make this conversion.

32.    A shown above, from time to time the Plan's accrual rate has been amended to provide a significantly lower rate of accrual in future years than in prior years. Upon information and belief, notice of such changes were not provided in accordance with ERISA § 204(h), 29 U.S.C. § 1054(h), either as initially enacted or as subsequently amended.

---

[11] The maximum for 2012 was $250,000.  In 2012, Plaintiff earned about $60,594.
[12] If Plaintiff accrued a benefit for 2012, it is $2,121 ($60,594 x .035 = $2,121).

33.    Because his normal retirement date is August 1, 2016, in August 2015 Plaintiff commenced contacting personnel at the Hospital in order to file a claim for his benefits in advance of August 1, 2016.[13] In April 2016 Plaintiff received an e-mail from the Hospital's Vice President of Employee Services, Defendant O'Neill, in which she stated that Plaintiff is not entitled to a pension because he was only 40% vested at the time of his termination in 1997.

34.    The 2009 SPD, in the Section titled "How to Apply for Benefits," says:

> When you decide to retire, you should notify Human Resources. If you are eligible, you will be given information about your retirement benefit options and application forms to complete.

35.    As stated, Plaintiff complied with this provision but rather than his being provided with information about "retirement benefit options" and given "application forms to complete[,]" Plaintiff was simply told he was not eligible for benefits because he was only 40% vested when he left employment in 1997.

36.    While the 2009 SPD provides a review procedure in the event that a claim for benefits is denied, Plaintiff was not even permitted to file a claim, thereby precluding any opportunity for review.  Indeed, Plaintiff was not even informed of any opportunity to seek a review.

---

[13] In fact, the Notice provides: "Please notify the Plan Administrator at least 90 days before you wish to have benefit payments commence."

## V.   CLASS ACTION ALLEGATIONS

37.   **Class Definitions**.  Plaintiff brings this action on his own behalf and on behalf of:

(a)   A "Benefits Class" defined as:

All Plan participants and beneficiaries who have been or will be denied benefits from the Plan because they are only partially, but not 100%, vested.

(b)   A "Break in Service Class" defined as:

All Plan participants and beneficiaries who have been impermissibly denied vesting credit due to a break in service and therefore have received no benefits or lower benefits than the Plan requires.

(c)   A "204(h) Notice Class" defined as:

All Plan participants and beneficiaries whose benefits have been or will be reduced because of the application of a lower accrual rate to their benefit calculation for which the required notice was not provided pursuant ERISA § 204(h), 29 U.S.C. § 1054(h).

(d)   A "Claims Procedure Class" defined as:

All past, current, and future Plan participants and beneficiaries.

38.   **Numerosity**.  The members of each class are so numerous that joinder of all members is impracticable.  Upon information and belief, each class consists of numerous members (1) who have been or will be denied benefits because they are partially but not fully vested, and/or (2) who have been impermissibly denied vesting credit due to a break in service and therefore have received no benefits or lower benefits than the Plan requires, and/or (3) whose benefits have been or will

12

be reduced due to impermissible reductions in benefit accrual rates, and/or (4) who have been or will be denied access to a statutorily mandated claims procedure.  The precise number of members in each class is within Defendants' custody and control.  Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for each class.  Common questions of law and fact exist as to all class members and predominate over any questions affecting solely individual members of each class, including the class action claims and issues described herein.

39.  **Commonality**.  The following common class claims and issues, among others, arise for Plaintiff and the Classes:

(a)  whether Defendants violated ERISA;

(b)  whether Defendants' alleged ERISA violations, if proved, justify appropriate equitable relief (including injunctive relief) and/or monetary relief;

(c)  whether Defendants have improperly denied benefits;

(d)  whether Defendants have improperly denied vesting credit;

(e)  whether Defendants have improperly reduced benefit accrual rates;

(f)  whether the Plan's claims procedures violate ERISA and federal regulations.

13

40.    **Typicality**.  Plaintiff's claims are typical of the claims of the class members because, as a result of the conduct alleged herein, Defendants have breached their statutory and contractual obligations to Plaintiff and the classes through and by uniform patterns or practices as described above including but not limited to denying earned benefits, improperly reducing benefits and denying access to a statutorily required claims procedure.

41.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of each class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and in the prosecution of ERISA claims, and has no interests antagonistic to or in conflict with those of the class.  For these reasons, Plaintiff is an adequate class representative under Federal Rule of Civil Procedure 23.

42.    **Rule 23(b)(1)(B) Requirements**.   The prosecution of separate actions by the members of each class would create a risk of adjudications with respect to individual members of each class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

43.    **Other Rule 23(b) Requirements.**  Class action status is also warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of each class would create a risk of establishing incompatible standards

of conduct for Defendants. It is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to each class as a whole. In the alternative, class action status is warranted under Rule 23(b)(3) because questions of law or fact common to members of each class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VI.   CLAIMS FOR RELIEF

**First Claim for Relief**
**(ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),**
**Benefits Under the Terms of the Plan on Behalf of the Benefits Class)**

44.   Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

45.   This Claim is brought against all Defendants except the Hospital.

46.   Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a participant may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . .[.]"

15

47.    A participant is defined as "an employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . ."

48.    Plaintiff is a former employee of the Hospital who is eligible to receive a benefit commencing on August 1, 2016.

49.    According to Defendants, Plaintiff was 40% vested when he first left the employ of the Hospital.

50.    Defendants denied Plaintiff benefits because he is only 40% vested.

51.    The 2009 SPD states that if you leave employment before you retire, "you must be vested to be eligible for any retirement benefits." Apparently, the Fiduciary Defendants have interpreted this to mean 100% vested. However, ERISA § 203(a)(2)(A), 29 U.S.C. § 1053(a)(2)(A), requires that a plan adopt a vesting schedule which provides for *nonforfeitable* benefits.

52.    The Hospital could have adopted a vesting schedule which provided for no vesting until a participant had five (5) years of vesting credit (*see* ERISA § 203(a)((2)(A)(ii)), at which time a participant would have been 100% vested. However, the Hospital chose to adopt a vesting schedule which gave participants partial vesting credit once a participant had accumulated at least three (3) years of vesting credit.

53.     Based on his initial period of employment, Plaintiff had a vested, i.e. nonforfeitable, right to 40% of his total accrued pension benefit, which he was to commence receiving on August 1, 2016.

54.     As such Plaintiff and the members of the Benefits Class are all entitled to their vested benefits under the terms of the Plan.

## Second Claim for Relief
### (ERISA §§ 502(a)(1)(B), (a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3) Additional Vesting Credit on Behalf of the Break in Service Class)

55.     Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

56.     This Claim is brought against all Defendants except the Hospital.

57.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant may bring an action:

> (A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan[.]

58.     Defendants have failed to take into account vesting credit for prior Hospital employment for Plan participants, such as Plaintiff, who have returned to Hospital employment after a break in service and then earned at least one year of vesting service. *See* ERISA § 203(b)(3)(B), 29 U.S.C. § 1053(b)(3)(B).

17

59.     As such Plaintiff and the members of the Break in Service Class are all entitled to additional vesting credit and such additional benefits to which they may be entitled under the terms of the Plan when that additional vesting credit is used to calculate their benefits.

**Third Claim for Relief**
**(ERISA §§ 502(a)(1)(B), (a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)**
**Enjoining Violations of ERISA on behalf of the 204(h) Class)**

60.     Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

61.     This Claim is brought against all Defendants except the Hospital.

62.     ERISA § 204(h), 29 U.S.C. § 1054(h) ("Section 204(h)"), precludes amending a pension plan to significantly reduce the rate of future accruals absent the plan administrator providing notice of the amendment to, *inter alia*, plan participants in accordance with the provisions of that section.

63.     Section 204(h) was first enacted in 1986 by P.L. 99-292.  It was amended in 2001 by P.L. 107-16.

64.     Changes to the Plan's accrual schedule caused significant reductions in future accruals within the meaning of Section 204(h).

65.     As such, each of the first two (2) amendments to the Plan's accrual schedule was subject to the provisions of Section 204(h) as initially adopted and

the third amendment to the Plan's accrual schedule was subject to the provisions of Section 204(h) as amended.

66.    Upon information and belief, Defendants did not comply with the requirements of Section 204(h) as initially adopted or as amended with respect to changes to the Plan's accrual schedule. Thus, the Plan amendments which significantly reduced the participants' future rates of accrual never became effective.

67.    Upon information and belief, Plaintiff and the members of the 204(h) Class are entitled to have all of their benefits calculated using the Plan's accrual schedule as in effect prior to any reduction in the rate of accrual for which notice was not provided in accordance with Section 204(h).

**Fourth Claim for Relief**
**(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**Enjoining Violations of ERISA on behalf of the Claims Procedure Class)**

68.    Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

69.    This Claim is brought against the Hospital.

70.    ERISA § 503, 29 U.S.C. § 1133, titled "Claims Procedure," provides:

In accordance with regulations of the Secretary,[14] every employee benefit plan shall—

---

[14] *See* 29 C.F.R. § 2560.503-1.

(1)  provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2)  afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

71.    As set forth, this section applies to "every employee benefit plan." Thus, it applies to the Plan.

72.    As set forth above, the 2009 SPD provides:

When you decide to retire, you should notify Human Resources. If you are eligible, you will be given information about your retirement benefit options and application forms to complete.

73.    In other words, the Plan does not provide for a claims procedure unless it first determines that a person is eligible. And, as with Plaintiff, if ineligibility is determined, the Plan does not provide the required notice in writing nor does it provide the specific information required by the Secretary's regulations (in pertinent part):

(g) *Manner and content of notification of benefit determination.*

(1) Except as provided in paragraph (g)(2)[15] of this section, the plan administrator shall provide a claimant

---

[15] Paragraph (g)(2) only concerns group health plan claims.

with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant—

   (i) The specific reason or reasons for the adverse determination;

   (ii) Reference to the specific plan provisions on which the determination is based;

   (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

   (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a)of the Act following an adverse benefit determination on review;

29 C.F.R. § 2560.503-1(g)(1). The Plan's denial of Plaintiff's benefits did not provide this information.

74.    In that the Plan's own application provision precludes compliance with ERISA's claims procedure rules, and as shown the Plan adheres to its own rule, the Plan's claims procedures violate ERISA.

75.    Because ERISA requires the Plan to have a compliant claims procedure, it was incumbent on the Plan's sponsor, the Hospital, to have adopted

compliant procedures.  It is also now incumbent on the Hospital to amend the Plan to adopt such procedures.

76.     The Hospital has violated ERISA by not adopting a compliant claims procedure.

77.     The Plaintiff and the members of the Claims Procedure Class are entitled to an injunction and other equitable relief (1) requiring the Hospital to act in accordance with law and regulation, and (2) reforming the Plan to comply with ERISA.

## Fifth Claim for Relief
### (ERISA §§ 404, 502(a)(3), 29 U.S.C. §§ 1104, 1132(a)(3), Injunctive and Declaratory Relief to Remedy Breaches of Fiduciary Duty on behalf of the Claims Procedure Class)

78.     Plaintiff repeats and reiterates the allegations set forth above as if fully set forth herein.

79.     This claim is brought against the Fiduciary Defendants.

80.     ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires a plan's fiduciaries to act in accordance with the plan documents as long as those documents are in accordance with ERISA.

81.     As described in the Fourth Claim for relief, the Plan's claims procedure did not comply with ERISA § 503, 29 U.S.C. § 1133, and the regulations thereunder, 29 C.F.R. § 2560.503-1.  For example, "claims procedures may not "contain any provision . . . that unduly inhibits or hampers the initiation . .

. of claims for benefits." *Id.* at (b)(3). As shown above, the Plan contravenes this provision by precluding the filing of a claim for benefits unless the Plan first determines that benefits are owed.

82.    As per the 2009 SPD, the Fiduciary Defendants are the Plan fiduciaries charged with administering claims. As such, the Fiduciary Defendants are required to adhere to ERISA and the Secretary's regulations if, as here, the Plan's provisions differ from those rules. The Fiduciary Defendants have breached their fiduciary duties by not administering claims in accordance with ERISA and its regulations.  Such breaches have injured Plaintiff and the members of the Claims Procedure Class.

83.    Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), or, if not cognizable thereunder, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the members of the Claims Procedure Class are entitled to injunctive and declaratory relief to remedy these continuing breaches and members of this Class who have not received benefits owed due to their having been denied the opportunity to file a claim, such as Plaintiff, should be granted those benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

1.      Certifying this as a class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of the proposed Classes described herein;

2.      Declaring that:

A.      Defendants have failed to pay pension benefits to Plan

participants who have partially, but not fully, vested in their benefits.

B.      Defendants have failed to take into account vesting credit for

prior Hospital employment for Plan participants, such as Plaintiff and the

members of the Break in Service Class, who have returned to Hospital

employment and then earned at least one year of vesting service;

C.      The first two (2) amendments to the Plan's accrual schedule

caused a significant reduction in the rate of future benefit accrual, and the

Plan Administrator failed to provide a written notice setting forth the

amendment and its effective date, as required by ERISA section 204(h), such

that those Plan amendments did not become effective;

D.      Defendant Hospital, as the Plan's sponsor, has violated ERISA

by not adopting a compliant claims procedure;

E.      The Fiduciary Defendants breached their ERISA fiduciary

duties by failing to implement an ERISA-compliant claims procedure;

3.      Ordering that:

A.      Defendants must pay Plaintiff and all members of the Benefits Class their vested benefits under the terms of the Plan;

B.      Defendants must provide Plaintiff and the members of the Break in Service Class with additional vesting credit and such additional benefits to which they may be entitled under the terms of the Plan when that additional vesting credit is used to calculate their benefits;

C.      Plaintiff and the members of the 204(h) Class are entitled to have all of their benefits calculated using the Plan's accrual schedule as in effect prior to any reduction in the rate of accrual for which notice was not provided in accordance with section 204(h); and

D.      Defendants must act in accordance with ERISA and its regulations;

4.      Enjoining the Defendant Hospital and the Fiduciary Defendants from implementing a non-compliant claims procedure;

5.      Reforming the Plan so that it complies with ERISA;

6.      Awarding attorneys' fees and costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), and/or the common-fund doctrine; and

7.      Awarding such further relief as the Court deems equitable and just.

DATED this 18th day of August, 2016.

**KELLER ROHRBACK L.L.P.**

By /s/ Havila C. Unrein
    Havila C. Unrein
    407 Main Street S.W., Ste. 1
    Ronan, MT 59864
    Telephone:  (406) 281-7231
    Facsimile:  (206) 623-3384
    hunrein@kellerrohrback.com

-with-

**KELLER ROHRBACK L.L.P.**
/s/ David S. Preminger
David S. Preminger (admitted *pro hac vice*)
1140 Avenue of the Americas
Ninth Floor
New York, NY 10036
Telephone: (646) 380-6690
Facsimile: (646) 380-6692
dpreminger@kellerrohrback.com

***Attorneys for Plaintiff***